Richard C. Bolanos, Bar No. 111343
rbolanos@lcwlegal.com
Cepideh Roufougar, Bar No. 225206
croufougar@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
153 Townsend Street, Suite 520
San Francisco, CA 94107

Telephone: (415) 512-3000
Facsimile: (415) 856-0306

Attorneys for Defendant
CITY OF CONCORD

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| RON BRUCKERT, et al. | Case No. C06-06920 BZ |
|---|---|
| Plaintiffs, | STIPULATION AND REQUEST FOR REMOVAL OF PENDING DATES FROM COURT CALENDAR DUE TO PENDING SETTLEMENT |
| v. | |
| CITY OF CONCORD, | |
| Defendant. | |

The parties to the above-entitled action jointly submit this Stipulation and Request for Removal of Pending Dates from the Court's Calendar Due to Pending Settlement and hereby STIPULATE:

1.  This matter is currently set for trial on July 7, 2008. A pre-trial conference is scheduled on June 19, 2008 and a settlement conference with the Hon. Edward Chen is scheduled on June 3, 2008.

2.  On March 13, 2008, the parties participated in a second mediation session in this matter. Following that mediation session, the parties continued settlement discussions and were able to arrive at a comprehensive settlement of this matter on April 9, 2008. A copy of the proposed settlement terms are attached hereto as Exhibit A.

3.  The parties are in the process of obtaining approval on the terms of the proposed

settlement from the City Council and from each consenting plaintiff. In addition, pending this Court's approval, counsel for Defendant City of Concord will draft the final settlement agreement, which will be read and signed by each current plaintiff to this lawsuit (those who have not withdrawn since the date of filing).

4. Due to the pending settlement, and to avoid incurring further fees and costs in this matter, the parties jointly request that the Court remove the trial date and all other associated dates from its calendar.

5. The parties jointly request that this matter be set for a case management conference on Monday, June 30, 2008 at 4:00 p.m., by which time the parties expect to have a fully executed settlement agreement to present to the Court for approval. Pending this Court's approval of the settlement, the parties will also prepare a stipulation seeking to dismiss, with prejudice, this action in its entirety.

IT IS SO STIPULATED.

Dated: 4-11-2008

Matthew George
Rains Lucia Stern
Attorneys for Ron Bruckert, et al.

Dated: 4/11/08

Cepideh Roufougar
Liebert Cassidy Whitmore
Attorneys for City of Concord

IT IS SO ORDERED

Dated: April 14, 2008

The Honorable Bernard Zimmerman
United States District Court Magistrate Judge

IT IS SO ORDERED
Judge Bernard Zimmerman

- 2 -
Stipulation and Request for Removal of Pending Dates from Court Calendar Due to Pending Settlement

# EXHIBIT A

Bruckert v. Concord
Settlement Deal Points

1.  Subject to City Council approval.

2.  Subject to each Plaintiff reading, approving, and signing the written settlement agreement.

3.  Subject to approval by the Concord Police Association ("POA").

4.  Settlement Payment

    The City will agree to pay $330,000 to Plaintiffs. This agreed upon total amount includes all claimed damages (including taxable wages), and attorneys' fees and costs (reported by an IRS form 1090). Plaintiffs will provide the City with the necessary information as to how this payment shall be allocated to each individual and/or for attorneys' fees and costs. In exchange for this payment, Plaintiffs agree to execute a written wavier of all claims up to the date the Judge approves the written settlement agreement and dismisses the case with prejudice in its entirety as to all parties.

5.  Donning and Doffing

    a.  The City will agree to modify the schedules of its patrol officers so that briefing begins at ten (10) minutes after the start of the shift. Officers shall be permitted to use the ten (10) minute period between the beginning of their shifts and the start of briefing to don their uniforms. The City and the POA agree that ten (10) minutes constitutes a reasonable length of time for performing this task.

    b.  The City will agree to modify the schedules of its patrol officers so that they are provided fifteen (15) minutes at the end of their shift to engage in those tasks related to the end of their shift, including doffing their uniforms. The City and the POA recognize that the nature of police work may occasionally prevent employees from being able to perform these tasks prior to the end of their shift. Should such a circumstance arise, an affected employee must comply with the overtime reporting requirements of the City and the Police Department.

    c.  The City and the POA agree that the terms "don" and "doff" refer to all tasks officers are required to perform in order to dress and undress in their police uniforms and any safety gear and other required gear, including but not limited to ensuring that their attire projects a professional image.

    d.  The City and the POA agree that the City can unilaterally withdraw the prospective changes described in this Section 5 regarding donning and doffing no later than 120 days following a final Ninth Circuit Court of Appeals or a final U.S. Supreme

Court decision which indicates that donning and doffing is not compensable work time for law enforcement personnel.

6.   Briefing Preparation Time

The City will agree to modify the schedules of those Sergeants and Corporals assigned to provide daily briefings. Sergeants and Corporals assigned to perform briefing tasks will be permitted to begin and end their work shifts thirty (30) minutes early in comparison to other employees on their teams. The purpose of this schedule modification is to ensure that these employees have sufficient time to prepare for conducting the daily briefing. The City and POA agree that the thirty (30) minute "flex" is a reasonable amount of time for a Sergeant or a Corporal to prepare for conducting briefing. The City and the POA recognize that the nature of police work may occasionally prevent employees from being able to "flex" their schedules. Should such a circumstance arise, an affected employee is expected to comply with the overtime reporting requirements of the City and the Police Department.

7.   Miscellaneous Pre-Shift and Post-Shift Tasks

a.   The parties recognize that changes in technology have allowed employees to have greater connectivity to the work place during their off-duty hours. Despite enhanced technological capabilities, with the exception of checking voicemail before a court appearance to determine if it has been cancelled as described in Section 9.5.4 of the Memorandum of Understanding ("MOU") between the City and the POA, the City does not require employees to access and/or respond to voicemail messages or e-mails outside of regular working hours. The City reaffirms that employees will be given time during their regular shift to review and answer voicemail message and/or e-mails. Employees who chose to access voicemail and e-mail at times other than their regular shifts do so with the understanding that these activities are neither required, nor expected. The parties agree that, given the *de minimis* nature of such activities, time an employee chooses to spend checking and responding to voicemails and/or e-mails does not constitute compensable work time.

b.   The parties recognize that the nature of police work may result in circumstances when an employee is either unable to complete certain required tasks during his or her regularly scheduled hours (e.g., report writing or review) or is required to engage in a law enforcement activity outside of his or her regularly scheduled hours (e.g., responding to an accident while commuting to/from work or performing a traffic stop while commuting to/from work). When such circumstances arise, an employee is required to comply with the City's overtime policy, as contained in Police Department General Order No. 5 and to accurately record any overtime work performed on his or her time card. The parties agree that this section is not intended to effect any change to the call back provisions contained in the MOU and is simply intended to reaffirm current policies and practices.

8. Canine Officers

The parties reaffirm that the 20 hours of compensation provided per month pursuant to Section 9.8 of the MOU between the City and the POA constitutes a reasonable amount of time for officers to perform and complete all aspects related to the care, feeding, exercise, transport to/from work, and maintenance of canines. The parties agree that either the City or the POA may raise the issue of compensation for canine officers during negotiations for any successor MOU.

9. Motorcycle Officers

a. The City agrees to continue to provide motorcycle officers with one hour of paid release time per week to engage in tasks related to maintaining and cleaning motorcycles. The City and the POA agree that this one hour of paid release time constitutes a reasonable amount of time to perform any tasks associated with the maintenance and cleaning of a motorcycle.

b. The City agrees that motorcycle officers shall be permitted to take their motorcycles to a car wash as designated by the City during their regular schedules as necessary, and that the City will pay such cleaning expenses.

c. The parties agree that motorcycle officers who chose to drive City motorcycles to and from work are not entitled to compensation for time associated with their ordinary commute. Motorcycle officers who are required to engage in law enforcement activities during their commutes are required to identify such time in accordance with the City's and the Department's overtime policies.

10. Overtime Generally

a. The City reaffirms its overtime policy, as described in Section 9.1 of the MOU between the City and the POA and in Police Department General Order No. 5. Subject to certain exceptions as described in General Order No. 5, employees performing work outside of their regularly scheduled shift must obtain advance approval from a supervisor before performing any such work.

b. Employees are required to identify any work performed which constitutes overtime on their electronic timecards. When identifying overtime activities on their time cards, employees are required to use the time card code which corresponds to the activity performed and/or provide a description of the activity performed, including the name of the supervisor who gave approval for performing that activity on an overtime basis.

c. The City and the POA recognize that, occasionally, officers will perform work that is legally considered to be *de minimis* and for which employees are not entitled to compensation. The parties agree that the City may unilaterally modify General Order

Page 3 of 4

04/10/2008 16:08 FAX 9256713469                                    ☒005/005

No. 5 to provide for a definition *de minimis* which would include activities performed on a daily basis for periods of up to ten minutes.

11. The parties all affirm that they have fully endeavored to address and resolve all known claims of uncompensated activities through this settlement. In the event that some other unknown claim is raised in the future, the City may propose those procedures it deems necessary to address the claim and to prevent the performance of unauthorized, uncompensated overtime. The City and the POA agree to meet and confer on any proposal that may modify the terms and conditions of employment for POA members as required under the MMBA.

12. The POA agrees to actively encourage all Plaintiffs to agree to the proposed settlement and dismiss all claims against the City with prejudice, including any FLSA claim that was, or could have been brought in this lawsuit.

13. The City's legal counsel will draft documents for settlement for approval by Plaintiffs' legal counsel as to form.

Entered into on behalf of Plaintiffs        Entered into on Behalf of the City

_____             _____

_____             _____

                                            _____ 4/11/08

_____             _____

58100.1 CO286-010